May it please the Court. My name is Walter K. Pyle. I represent Mr. Miller, the appellant in this case. Mr. Miller asserts that during the closing argument, the prosecutor made improper and prejudicial arguments to the jury, and that those improper remarks were sufficiently egregious that they gave him an unfair trial in violation of the Due Process Clause. The prosecutor argued that Mr. Miller, who was acting pro se, had an advantage. She started out by saying, I want to tell you something that I think is very important. Mr. Miller has an advantage. She made some comments that he was in a suit and suggested that this was somehow different from what he had been wearing during the commission of the crimes. But in addition to appearing in a nice suit, she said he presented an expensive defense and he had unlimited resources available for his defense. And she concluded, I want you to think very carefully about these advantages that Mr. Miller has. Well, the idea that a criminal defendant this Mr. Miller is indigent, the idea that he has unlimited resources, it's simply not true. And it simply has no place in a prosecutor's argument. The prosecutor can comment on the evidence. The prosecutor can comment on inferences to be drawn from the evidence. This was not an evidence as to his unlimited resources. And she followed up by saying, commenting on the credibility of the witnesses. Mr. Miller had contended in his opening, in his part of the argument, that the witnesses were not believable. And Erica, who was one of the witnesses, had not left Mr. Miller. She continued to hang around him. And the prosecutor explained she was afraid, Erica was afraid of Mr. Miller. He did drugs daily. He was a member of the mafia. He was a member of the Aryan Brotherhood. She said, Erica would be afraid of somebody like that. Would she, she said? I would be afraid of her, of him. Now, the State says these arguments, the State says several things. They say the argument about unlimited resources and so forth, they suggest it's an ambiguous argument, or at least, from cases that say an ambiguous argument does not necessarily rise to a due-process violation. But there's nothing ambiguous about this. A statement, he has unlimited resources, is not ambiguous. The State says, well, she was just saying, don't have sympathy for the defendant because he doesn't have a lawyer. I suppose I would be afraid of might be ambiguous. Well, the State says it's really saying a reasonable person would be afraid of him. And that's one interpretation. So in that sense, it's ambiguous. But it also, when we, when the whole, the whole idea of, of vouching for a witness or bringing in things from outside that are not part of the record, the whole idea is that a prosecutor is in a position, number one, that has the prestige of the government. And we see all these television programs today. The prosecutor is always the good guy. I was reading an article in the Chicago Daily Law Bulletin that said that, talking, commenting on the way that relations have broken down in the last, that last decade between prosecutors and defense counsel. They suggested it was the television programs because the defense lawyer is always played as somebody who has a smirk on his face and is, is trying to find some loophole. The prosecutors tell me that some of the other shows have an equally deleterious effect on them. They keep running into juries that expect magical scientific evidence to remove every doubt and close every door. I have also heard that. I have also heard that. Well, back on this one, though, I mean, we can concede that it's good for prosecutors to avoid the I. Correct. And this was a series of things. She also, she also made the implication right after saying that Erica was afraid of him. How do we know this? I would be afraid of him. The prosecutor, the jury views the prosecutors having inside information. They always think, when you choose a jury, the jury says, you say, do you have any experience in jury? Did, at the last trial you sat as a juror, what were your experience? They said, we, very often they'll say, we thought we didn't get all the evidence. And the court cases recognize that the jurors do sometimes think this. And after talking about Erica being afraid and I would be afraid, she followed up with this implication that there are other witnesses out there. She says, if there's other witnesses out there who don't want to come forward, who want to hide, well, fine. How many more of these blonde 20-years-olds have to come into court to show Mr. Miller's scheme? This doesn't show, this doesn't have any legitimate purpose. None of these arguments have any legitimate purpose in a final argument. And the implication is that the prosecutor knows about this. There's one case that says, when you do this, you're saying to the jury, I won't know more about this case than you do, and this guy is really a bad guy. So when you take all these things together, and remember, this is a case where the jury asked to rehear the testimony of Erica twice. They, it was read back once, and then they asked a second time to have the evidence read back, the testimony of Erica. And the outcome of the case did turn on the credibility of the witnesses. So in a situation like this, there is sufficient prejudice. There was no legitimate reason for this, these comments to be made, and the only effect they could have would be to substantially prejudice the defendant by suggesting that the prosecutor had information that was not available to the jury, and she lent her support to the credibility of Erica. So I suggest that all these things come together to the point where it deprived the defendant of a fair trial. Do you want to save the balance of your time for rebuttal? I do. Thank you very much, Mr. Powell. Mr. Ortega? Yes. Thank you, Your Honors, and may it please the Court. My name is Bruce Ortega, and I'm representing the State in this case. And it's our view that the challenge remarks of the prosecutor did not rise to the level of a constitutional process violation, and certainly in so ruling, the State courts did not rule contrary to or unreasonably apply any clearly established United States Supreme Court precedent. What I would – and I'm perfectly willing to answer any question this Court has on the prosecutorial – alleged prosecutorial misconduct. But what I'd like to do first is concentrate on Fret and assume for a moment that there was misconduct, either rising to the level of a constitutional violation and let's determine whether or not that misconduct had a substantial and injurious effect on the verdict. Now, the Petitioner's position is that this misconduct had the effect of supporting the credibility of the two main prosecution witnesses, Erika and Bree, and but for that, the jury would not have returned the guilty verdicts. It's our position that the charges in this case, Erika and Bree, their testimony was overwhelmingly corroborated by other evidence apart from themselves. The prosecutor's remarks, if improper, did not have a substantial and injurious effect on the verdict. Let's take a look at the two sexual assault convictions, the evidence that supports that apart from the testimony of Erika. The sexual assault examination, she was distraught. She had trauma to her mouth, which corroborated her testimony that the defendant held his hand over her mouth to keep her from screaming. She had braces. The inside of her mouth was cut up. Trauma to her vaginal area. A bruise forming on her arm, which corroborated her testimony that he grabbed her and tried to pull her towards the bedroom. A bruise forming on her inner thigh, which corroborated her testimony that he pulled at her legs. Let's take a look at the escort service convictions, the pimping and the pandering. The evidence on these was overwhelming apart from the testimony of Erika and Bree. We have Leah Patton, Petitioner's own niece, who testified that Petitioner's escort service was a front for prostitution. Leah testified that she overheard Petitioner tell the girls that if they were ever arrested for prostitution, the employment contracts they signed would protect them from prostitution charges. Inside his computer were lists of women's names, lists of men's names, time periods, and monetary amounts. Now, in his reply brief, Petitioner said one view of this evidence was that Petitioner was running a legitimate dating service and that the girls just on their own would have sex with the men, which, of course, discounts Bree's testimony that he always gave them condoms and lubricant before they went on their dates. And I know of no legitimate dating service where only one party pays, and there's a time limit put on it while the Petitioner is outside waiting. In the immortal words of Bob Dylan, the jury didn't need a weatherman to know which way the wind blows. He was overwhelmingly guilty on the sexual assault convictions, on the pimping and the pandering, and any improper remarks the prosecutor made did not have a substantial injurious effect. On the verdict. Unless the Court has any questions, I'm willing to submit the matter. Roberts. I don't see any. Thank you, counsel, for your argument. Mr. Pyle, any rebuttal? Pyle. Yes. Counsel has addressed certain things about the overwhelming evidence. Yet there — in every — in every witness that testified to the things counsel said, there was — it was not a clear-cut thing. For example, a Pleasant Hill police officer — and we've — we've listed some of these things in our reply brief. A Pleasant Hill police officer told how Erica had lied to him in filing a traffic report. A Martinez police officer was in the courtroom when he was called to the stand and testified that the story that Erica told on the stand was — contained a lot of things that she had never told to him. Patton, as it develops, was — as counsel said, testified that this was a prostitution ring. But on cross-examination, it was brought out that all this information was received from Erica, not from the — from the — not from Mr. Miller. So all these things, there's always — there's all — all these — none of these things. And in keeping — in analyzing Brecht, it's important to keep in mind that the issue is where we come into that gray area where we just don't know. And there's another case, O'Neill v. McAnich, which is not cited in the briefs, but that amplifies Brecht. And it says it much more specifically, that what Brecht means is, if a judge has — is in virtual equipoise, that that — the petitioner must win. So if it falls in that gray area where we don't know, then the petitioner should win. And I suggest that, at best — at best here, we don't know whether the jury verdict was — was — was effective. Okay. Thanks, both counsel, for their arguments. Very good arguments, both. The case just argued will be submitted for decision.
judges: Canby, Thompson, Hawkins